**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 26-20128-CR-BECERRA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

WILNER RENAUD,

*Defendant*.
_________________________________/

**REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 5**

Wilner Renaud, through undersigned counsel, respectfully replies in support of his Motion to Dismiss Count 5 of the Indictment.

**I. 18 U.S.C. § 611 Regulates Voter Qualifications, Not Voter Fraud.**

The government argues that § 611 is justified by Congress' power to regulate voter fraud. D.E. 28 at 2-6. The problem with this argument is that § 611 is not a voter *fraud* statute, it is a voter *qualification* statute. And the text of the Constitution and the applicable Supreme Court precedent make clear that establishing voter qualifications is a power that lies solely with the States.

As a starting point, it is undoubtedly true that Congress, through the Elections Clause, can regulate voter fraud. *See Smiley v. Holm*, 285 U.S. 355, 366 (1932). For example, 18 U.S.C. § 1015(f) criminalizes "knowingly mak[ing] any false statement or claim that" the person "is a citizen of the United States in order to register to vote or to vote in any" election. Unlike § 611, that statute is clearly a

voter fraud statute: it punishes false representations made in the course of voting, and is, thus, within the ambit of the Elections Clause.

But that is not what § 611 does. It does not target voter fraud; it bans an entire class of people from voting, *regardless of what the State authorizes*. If Florida legalized noncitizen voting tomorrow, § 611 would still criminalize noncitizens who voted.[1] It is a substantive voter qualification, and the Supreme Court has spoken unequivocally: "[p]rescribing voting qualifications . . . 'forms no part of the power to be conferred upon the national government' by the Elections Clause, which is 'expressly restricted to the regulation of the times, the places, and the manner of elections.'" *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 17 (2013) (quoting The Federalist No. 60, at 371 (A. Hamilton)).

The government relies heavily on *Oregon v. Mitchell*, 400 U.S. 112 (1970), claiming that it "remains instructive." D.E. 28 at 4. Yet, contrary to that claim, as the Supreme Court stressed in *Inter Tribal*, there is no precedential opinion in *Mitchell*. In *Inter Tribal*, the Court pointed out that "[f]ive Justices [in *Mitchell*] took the position that the Elections Clause did *not* confer upon Congress the power to regulate voter qualifications in federal elections" and, of the five Justices concurring in the outcome of that case, only one, Justice Black, was of the view that

[1] The government contends that if State law allowed an alien to vote, that person could legally vote under § 611. D.E. 28 at 4. This is an overbroad reading of § 611(a), which states that an alien cannot vote for the election of the "office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner" unless "the election is held partly *for some other purpose*" and "aliens are authorized to vote *for such other purpose*" under State law. 8 U.S.C. § 611(a)(1). In other words, an alien cannot vote for President or any of the other office listed in § 611(a), even if authorized by State law.

congressional power to prescribe the limited 18-year-old age qualification to vote at issue there derived from the Elections Clause. *Inter Tribal*, 570 U.S. at 16 n. 8 (emphasis in original). The Supreme Court, therefore, found that the *Mitchell* case "lacked a majority rationale," and "is of minimal precedential value." *Id.* Accordingly, the Government's reliance on *Mitchell* is misplaced.

## II. The Government's Power Over Immigration is Not a Police Power and The Constitution's Affirmative Restraints on Congress' Power to Set Voter Qualifications Trumps its Authority Over Immigration.

The government alternatively contends that § 611 is a constitutional exercise of Congress' authority to regulate immigration under the Naturalization Clause of the Constitution (Article I, Section 8, Clause 4), as supplemented by the Necessary and Proper Clause (Article 1, Section 8, Clause 4). D.E. 28 at 6-8. To be sure, Congress' immigration power is broad. It allows Congress to regulate who enters the country and what rules they must follow to remain here. As necessary and proper to accomplish those ends, Congress may also pass *criminal* laws, proscribing conduct that thwarts the immigration process.

But § 611 does not regulate the process or conditions for entering or remaining in the country. It is about who gets to vote. And the Constitution's text, the historical record, and the Supreme Court's precedent show that only the States can regulate the composition of the federal electorate. So the Government advances a novel argument to justify § 611's voter qualification: it argues that the immigration power authorizes Congress to criminalize the conduct of aliens, *even in matters unrelated to the immigration process*.

The government is wrong twice over. First, Congress does not have a general police power over aliens. Second, Congress cannot decide who gets to vote. Moreover, where the Constitution imposes an affirmative restraint on federal power to preserve State sovereignty, that affirmative restraint trumps Congressional action, even in areas where the Government has plenary authority. And because the Voter Qualification Clauses are precisely such an affirmative restraint, they preclude Congress from establishing any voter qualification. At bottom, § 611 exceeds Congress's enumerated powers, and in any event the Constitution affirmatively restrains it from setting voter qualifications.

*A.* *18 U.S.C. § 611 is not about the admission of aliens or the conditions of their right to remain; it is a voter qualification law unrelated to the immigration process.*

The "power to admit or exclude aliens is a sovereign prerogative." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (citation omitted). Article I grants Congress the authority to establish a "uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. From this power, the Legislature derives the "plenary authority to decide which aliens to admit," and the corollary power "to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. As a result, the "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792

(1977)). In short, the government has "undoubted power" over "immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

Those principles are reflected in the government's response. D.E. 28 at 6-8. And its cases similarly focus on the power of Congress to regulate the status, classification, and admission of aliens in the United States. *See id.* (citing *Rodriguez v. United States*, 983 F. Supp. 1445 (S.D. Fla. 1997) (dismissing plaintiffs' equal protection claim that challenged the Welfare Reform Act, 8 U.S.C. § 1612, on the basis that it excluded certain aliens from receiving social security income and food stamp benefits); *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320 (1909) (affirming Congress's authority to enact the challenged statute that "exclude[ed] from admission into the United States . . . those afflicted 'with loathsome or with dangerous diseases.'" (citation omitted); *Hines v. Davidowitz*, 312 U.S. 52 (1941) (holding that federal law preempted Pennsylvania's statutory scheme for registering and identifying aliens living in the United States); *Jean v. Nelson*, 711 F.2d 1455 (1983), *vacated en banc*, 727 F.2d 957 (1984) (addressing class action by Haitian aliens who arrived in this District and challenged the lawfulness of their incarceration, and holding that "[e]xcludable aliens cannot challenge the decisions of executive officials with regard to their applications for admission, asylum, or parole on the basis of the rights guaranteed by the United States Constitution," but that "[t]hey do have rights . . . to whatever process Congress [and] . . . the Executive . . . have extended them[.]"); *United States v. Gordon-Nikkar*, 518 F.2d 972 (5th Cir. 1975) (holding that aliens may be excluded from federal jury service); *Mathews v.*

*Diaz*, 426 U.S. 67 (1976) (allowing Congress to place conditions on an alien's ability to participate in a federal medical insurance program); *United States v. Singh*, 979 F.3d 697 (9th Cir. 2020) (holding the Congress has the power to prohibit foreign nationals from contributing money to American political campaigns)).

But § 611 doesn't regulate the entry, admission, deportation, registration, identification, naturalization, or status of aliens. Rather, this statute dictates who gets to vote, and in doing so it prescribes "the composition of the federal electorate." *See Inter Tribal*, 570 U.S. at 16. Simply put, § 611 is not an immigration law, it is a voter qualification law. None of the government's cases stand for the proposition that Congress can dictate who can vote.

The government cites two examples of immigration statutes relating to voting: 8 U.S.C. §§ 1227(a)(6) and 1182(a)(10)(D). D.E. 28 at 7. In 1996, when Congress criminalized noncitizen voting in Title 18, it added other provisions to Title 8 tying noncitizen voting to entry and removal. Specifically, the amended Immigration and Nationality Act provided that any alien who votes in violation of "any" federal, state, or local law is "inadmissible." 8 U.S.C. § 1182(a)(10)(D)(i). The Act likewise provided that any alien who unlawfully votes in "any" election is deportable. 8 U.S.C. § 1227(a)(6)(A). These laws are a lawful exercise of Congress' immigration power because they prohibit entry or mandate removal following a violation of any election law (including State law). But these provisions of Title 8 that are cited by the government pertain to the "admission of aliens" and the exclusion of "those who possess those characteristics which Congress has

forbidden." *Boutilier v. Immigr. & Naturalization Serv.*, 387 U.S. 118, 123 (1967). As such, they are plainly an exercise of Congress' plenary power over the entry of aliens and their right to remain.

Conversely, § 611 does not regulate the conditions under which an alien can enter or remain in the country. It dictates who gets to vote and excludes noncitizens from the franchise on pain of imprisonment. A law prescribing "who may vote" in federal elections is the very definition of a voter qualification. *See Inter Tribal*, 570 U.S. at 16.

*B. Congress's power to make alienage-based classifications does not give it nationwide police power over every noncitizen.*

Without citing any authority for its position, the government seems to claim that § 611 is within Congress's immigration power because Congress has the authority to regulate "the conduct of aliens in the country." D.E. 28 at 6 (quoting *Rodriguez*, 983 F. Supp. at 1454). That assertion (relying on an equal protection case) erroneously conflates the relaxed standard of review for classifications based on alienage with a police power over aliens.

But Congress does not have a police power over aliens within the country. It has been "clear" for over two centuries that "Congress cannot punish felonies generally." *Cohens v. Virginia*, 5 L. Ed. 257, 297 (1821). That is because the Constitution withholds from Congress a "plenary police power that would authorize enactment of every type of legislation." *United States v. Lopez*, 514 U.S. 549, 566 (1995); *see also United States v. Morrison*, 529 U.S. 598, 618 n. 8 (2000). The States, not Congress, are the designated repository of the police power. *Bond v. United*

*States*, 572 U.S. 844, 854 (2014) (citing *Lopez*, 514 U.S. at 567). And there is "no better example of the police power" than the suppression of crime. *Morrison*, 529 U.S. at 618. The States possess the "primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1992) (citation omitted).

The Supreme Court has noted that "Congress regularly makes rules [for aliens] that would be unacceptable if applied to citizens," singling out the "exclusion" of aliens and "the power to deport them." *Mathews*, 426 U.S. at 80. And the Court has described this as a "fundamental premise of immigration law." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (upholding immigration law mandating some aliens' detention pending removal). But in the words of Justice Stone, the "federal government has no general police power over aliens" and, after entry, to the extent it can "exercise any control over them, it must be in the pursuance of a power granted to it by the Constitution." *Hines*, 312 U.S. at 76 (Stone, J., dissenting).[2]

That Congress lacks a police power over aliens flows from the core principle animating this brief: Congress' immigration power is "subject to important constitutional limitations" and must be implemented by "constitutionally permissible means." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). The government's declaration of the authority to proscribe the conduct of noncitizens

---

[2] Although Justice Stone dissented in *Hines*, the issue in that case was whether a state statute mandating the registration of aliens was preempted. Justice Stone disagreed with the majority that it was preempted; however, the *Hines* majority did not dispute his contention that the federal government lacked a general police power over aliens, and it did not hold that the government *did* have this power. Undoubtedly, the registration of aliens within our borders is a part of the immigration power. *See Arizona*, 567 U.S. at 400-01.

amounts to an assertion of the police power—a sweeping power the Framers intentionally denied Congress. *See Cohens*, 5 L. Ed. at 297; *Lopez*, 514 U.S. at 566; *Morrison*, 529 U.S. at 618.

*C.* *The Constitution's affirmative restraint on Congress' power to set voter qualifications trumps its plenary power over immigration.*

There are a few affirmative checks on federal power embedded in the Constitution that restrain federal authority and modify the scope of Congress' enumerated powers. Beyond the affirmative restraints that protect individual rights, the Constitution also contains affirmative restraints that protect State sovereignty. The Framers created "carve out[s]" expressing "elements of state sovereignty that Congress may not employ its delegated powers to displace." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550 (1985). And those carve outs trump Congress' delegated powers. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) (holding that sovereign immunity under the Eleventh Amendment trumped the Indian Gaming Regulatory Act, which allowed tribes to "bring suit in federal court against a State in order to compel performance" of the State's duty to negotiate in good faith).

The Voter Qualification Clauses affirmatively restrain Congress from setting its own voter qualifications—the question of *who* can vote. *See* D.E. 19 at 4-6. Article I's Voter Qualification Clause provides that the "Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. I, § 2, cl. 1. By its plain terms, the State sets the qualification; Congress has no role whatsoever in the matter. They exclusively

reserve the power to establish voter qualifications to the States and deny that power to the federal government. As affirmative restraints, they prevail and preclude Congress from setting voter qualifications, even those pertaining to matters where Congress otherwise has complete control. Had the Framers intended for Congress to play a role in voter qualifications, they would have simply said so—as they did when delegating other electoral powers. The Supreme Court made this structural point clear in *Inter Tribal*: "One cannot read the Elections Clause as treating implicitly what these other constitutional provisions regulate explicitly." 570 U.S. at 16. Put plainly, the Constitution's text "prescribes a straightforward rule for the composition of the federal electorate." *Id*. That rule allows Congress to enact *only* procedural regulations. *See id.*

The plain text of the Voter Qualification Clauses, along with the Elections Clause, demonstrate that Congress lacks the authority to decide the composition of the federal electorate. In sum, "[e]ven when the Constitution vests in Congress complete law-making authority over a particular area," an affirmative restraint designed to protect the State's "residuary and inviolable sovereignty" prevails. *Seminole Tribe*, 517 U.S. at 72 (first quote); *Printz v. United States*, 521 U.S. 898, 919 (1997) (quoting The Federalist No. 39 (J. Madison)) (second quote). Because only the States can decide who gets to vote, § 611 is facially unconstitutional.

**III. Conclusion.**

For the foregoing reasons, this Court should grant the Motion to Dismiss Count 5 because Congress may not affirmatively establish a voter qualification.

Respectfully submitted,

**HECTOR A. DOPICO**
**FEDERAL PUBLIC DEFENDER**

By: *<u>/s/Evan L. Kuhl</u>*
Evan L. Kuhl
Assistant Federal Public Defender
Florida Bar No. 1025143
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
E-Mail Address: evan_kuhl@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*<u>/s/Evan L. Kuhl</u>*
Evan L. Kuhl